Case No. 25-5137

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY, et al.
*Plaintiffs/Appellants,*

v.

UNITED STATES BUREAU OF RECLAMATION, et al.
*Defendants/Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 1:20-CV-00706-JLT-EPG
Honorable Jennifer L. Thurston

**PLAINTIFFS-APPELLANTS' REPLY BRIEF**

E. Robert Wright (CSB No. 51861)
Law Office of E. Robert Wright
909 12th Street, Suite 202
Sacramento, California 95814
Telephone: (916) 557-1104
Email:  bwrightatty@gmail.com
*Attorney for Plaintiffs/Appellants Restore the Delta and*
*Planning and Conservation League*

John Buse (CSB No. 163156)
Aruna Prabhala (CSB No. 278865)
Center for Biological Diversity
2100 Franklin Street, Suite 375
Oakland, CA 94612
Telephone: (510) 548-1401
Email:  jbuse@biologicaldiversity.org
aprabhala@biologicaldiversity.org

*Attorneys for Plaintiff/Appellant Center for Biological Diversity*

Adam Keats (CSB No.191157)
Law Office of Adam Keats, PC
558 Capp St.
San Francisco, CA 94110
Telephone: 415-964-0070
Email: adam@keatslaw.org
*Attorney for Plaintiffs/Appellants Restore the Delta and
Planning and Conservation League*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................5

INTRODUCTION .............................................................................................8

PERTINENT STATUTES AND REGULATIONS.................................................9

STANDARD OF REVIEW ...............................................................................10

ARGUMENT ..................................................................................................11

I.   The WIIN Act Did Not Eliminate Reclamation's Discretion to Comply with the ESA, NEPA, or CVPIA .................................................................11

   A. To Prevail, Reclamation Must Show that the WIIN Act Impliedly Repealed its Duties to Comply with the ESA, NEPA, and CVPIA in Creating the Converted CVP Contracts. ...........................................................................11

   B. It Would Have Made Little Sense for Congress to Have Hidden a "Monumental Policy Shift" in Section 4011(a)(4)(C) of the WIIN Act, as Congress Knew How to Clearly Repeal Laws and Did So Elsewhere Within the WIIN Act. ..................................................................................16

   C. Notwithstanding Reclamation's Arguments, Article 3(e) of the Prior Contracts Required ESA Review Prior to the Execution of the Converted Contracts. ......................................................................................19

   D. Reclamation's Argued Interpretation of the Prior Contracts and the WIIN Act is Contrary to this Court's Interpretation in *Haaland.* ........................20

   E. Notwithstanding Reclamation's Arguments, Articles 2(a) and (b) of the Prior Contracts Required NEPA Review Prior to the Execution of the Converted Contracts.................................................................................23

   F. Section 4011 of the WIIN Act Did Not Limit Reclamation's Discretion to Negotiating the Financial Terms of Repayment Contracts. ........................25

   G. Reclamation's Conversion of Water Service Contracts under Section 4011 Is a Major Federal Action that Requires NEPA Review. ...........................26

   H. ESA and NEPA Review Would be Required Even if There was No CVPIA. 27

II. The WIIN Act Savings Clauses Preserved the Requirements for ESA Consultation and NEPA Review for the Conversion of Water Service Contracts. 29

    A. Section 4012(a)(2) of the WIIN Act Preserved ESA and NEPA Review. ..29

    B. Sections 4012(a)(3) and (4) and (b) Preserved ESA Review......................32

    C. Section 4011(d)(4) Preserved ESA and NEPA Review..............................34

    D. The WIIN Act Signing Statement Also Supports the Proposition that the Act Preserved ESA Review........................................................................35

III. Despite the Contractors' Remonstrations to the Contrary, the Contract Conversions Triggered NEPA and the ESA and are Not Excluded from NEPA Review Under Categorical Exclusions. ..........................................................36

    A. The WIIN Act Contract Conversions are "Major Federal Actions" Under NEPA..........................................................................................................36

    B. No Categorical Exclusions Apply. ...........................................................37

IV. Appellants' Request for Entry of Judgment Is Not Premature......................38

CONCLUSION......................................................................................................40

SIGNATURE ATTESTATION ..............................................................................40

CERTIFICATE OF COMPLIANCE .....................................................................41

ATTACHMENT A: ADDENDUM.........................................................................42

# TABLE OF AUTHORITIES

**Cases**

*A Community Voice v. U.S. Environmental Protection Agency*,
997 F.3d 983 (9th Cir. 2021)................................................................16

*Aluminum Co. of America v. Central Lincoln Peoples' Utility District*,
467 U.S. 380 (1984) ............................................................................26

*California Natural Resources Agency v. Ross*,
2020 WL 2404853, *20 (No. 1:20-CV-00426, E.D. Cal., May 11, 2020) ..........34

*Center for Biological Diversity v. U.S. Environmental Protection Agency*,
168 F.4th 1164 (9th Cir. 2026)...........................................................28

*Environmental Protection Information Center v. Simpson Timber Company*,
255 F.3d 1073 (9th Cir. 2001)............................................................16

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ...................................................................... 14, 18

*Forelaws on Board v. Johnson*,
743 F.2d 677 (9th Cir. 1998)..............................................................27

*Friends of the Inyo v. U.S. Forest Service*,
103 F.4th 543 (9th Cir. 2024) ............................................................29

*Grand Canyon Trust v. United States Bureau of Reclamation*,
691 F.3d 1008 (9th Cir. 2012).............................................................16

*Karuk Tribe of California v. U. S. Forest Service*,
681 F.3d 1006 (9th Cir. 2012) (en banc) ............................................13

*Kimble v. Marvel Entertainment, LLC.*,
576 U.S. 446 (2015) ...........................................................................37

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ...........................................................................10

*Murphy Company v. Biden*,
65 F.4th 1122 (9th Cir. 2023), *cert. denied*, 144 S.Ct. 1111 (2024). ...................32

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
551 U.S. 644 (2007) ...................................................................... 15, 23

*Natural Resources Defense Council v. Houston*,
146 F.3d 1118 (9th Cir. 1998),
*cert. denied*, 526 U.S. 1111 (1999)............................... 13, 25, 27, 36, 39

*Northwest Ecosystem Alliance v. U. S. Fish and Wildlife Service*,
  475 F.3d 1136 (9th Cir. 2007)................................................................10, 11
*NRDC v. Haaland*,
  102 F.4th 1045 (9th Cir. 2024) ................................................. 20, 21, 22, 23, 33
*Pacific Coast Fed. of Fishermen's Assn's v. U.S. Dept. of the Interior*,
  655 Fed.Appx. 595 (9th Cir. 2016.) .......................................................13
*Pit River Tribe v. U.S. Forest Service*,
  469 F.3d 768 (9th Cir. 2006).................................................................36
*San Luis & Delta-Mendota Water Auth. v. Locke*,
  776 F.3d 971 (9th Cir. 2014).................................................................39
*San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation District*,
  49 F.4th 1242 (9th Cir. 2022), *cert. denied,* 144 S.Ct. 74 (2023).........................28
*Sierra Club v. Bosworth*,
  510 F.3d 1016 (9th Cir. 2007)................................................................ 37, 38
*Stand Up for California! v. U.S. Dep't of the Interior*,
  959 F.3d 1154 (9th Cir. 2020)................................................................29
*Westlands Water District v. U.S. Department of the Interior*,
  376 F.3d 853 (9th Cir. 2004)................................................................11
*Whitman v. American Trucking Associations, Inc.*,
  531 U.S. 457 (2001) ................................................................16

**Statutes**

5 U.S.C. § 706(2)(A)-(D)................................................................39


***Endangered Species Act ("ESA") 16 U.S.C. §§ 1531 et seq***
16 U.S.C. § 1536(a)(2)................................................................27


**National Environmental Policy Act ("NEPA") 42 U.S.C. §§ 4321 et seq.**.........17
42 U.S.C. § 4332(C)(i)................................................................28


***Central Valley Project Improvement Act ("CVPIA") Pub. L. No. 102-575, § 3401 et seq., 106 Stat. 4600, 4706–31 (1992)***
CVPIA § 3404................................................................30
CVPIA § 3404(c) ................................................................ 26, 31
CVPIA § 3404(c)(1)................................................................ 29, 30, 36, 39

CVPIA § 3404(c)(2) ..................................................................................24

CVPIA § 3407(d) .....................................................................................34

***Water Infrastructure Improvements for the Nation Act ("WIIN Act"), Pub. L. No. 114-322, 130 Stat. 1628 (2016) (codified at 42 U.S.C. § 6945(d))***

WIIN Act § 1175 ......................................................................................17

WIIN Act § 2201(b)(3) .............................................................................17

WIIN Act § 3404(c)(2)(A) ........................................................................17

WIIN Act § 3605(c) ..................................................................................17

WIIN Act § 3608(c)(2)(B) .........................................................................17

WIIN Act § 3704(c)(2)(A) .........................................................................17

WIIN Act § 4004 ......................................................................................35

WIIN Act § 4007 ......................................................................................35

WIIN Act § 4009(a) ..................................................................................35

WIIN Act § 4009(c) ..................................................................................35

WIIN Act § 4011(a)(1) ..............................................................................26

WIIN Act § 4011(a)(4)(C) ................................................... 8, 16, 22, 24, 35

WIIN Act § 4011(d)(4) ..............................................................................34

WIIN Act § 4012(a) ..................................................................................32

WIIN Act § 4012(a)(2) ..........................................................................8, 17

WIIN Act § 4012(a)(3) ..............................................................................32

WIIN Act § 4012(a)(4) .........................................................................32, 33

WIIN Act § 4012(b) ..................................................................................33

WIIN Act § 4013 ......................................................................................35

WIIN Act § 5011 ......................................................................................18

**Regulations**

50 C.F.R. § 402.02 ...................................................................................13

50 C.F.R. § 402.03 ...................................................................................15

50 C.F.R. § 402.14(a) ...............................................................................27

**INTRODUCTION**

The United States Bureau of Reclamation ("Reclamation") claims it had no discretion to comply with the Endangered Species Act ("ESA") or the National Environmental Policy Act ("NEPA") in converting the water contracts at issue in this matter because, it claims, under Section 4011(a)(4)(C) of the Water Infrastructure Improvements for the Nation ("WIIN") Act it could not modify anything other than financial terms included in the prior versions of the contracts. The prior contracts, however, included terms *requiring* compliance with the ESA and NEPA; Reclamation *eliminated* these non-financial terms when it converted the contracts. Not only did Reclamation exercise the discretion it maintained before and after the WIIN Act was enacted, but it did so to subvert and avoid its duty to comply with the ESA and NEPA. Its defense is meritless.

The ESA, NEPA, and Central Valley Project Improvement Act ("CVPIA") require ESA and NEPA compliance in negotiating, creating, and executing Central Valley Project ("CVP") contracts. The WIIN Act did not repeal these requirements by implication, and Reclamation claims it does not seek repeal, by implication or otherwise. Congress knew how to, and did, expressly repeal or modify the requirements of *other laws* at least eight times in the WIIN Act. For example, the savings language in Section 4012(a)(2) of the WIIN Act, states:

SEC. 4012. SAVINGS LANGUAGE.

(a) IN GENERAL.—This subtitle *shall not* be *interpreted* or implemented in a manner that—
(2) affects or modifies *any* obligation under the Central Valley Project Improvement Act (Public Law 102-575; 106 Sat. 4706), *except* for the savings provisions for the Stanislaus River predator management program expressly established by section 11(d) and provisions in section 11(g); (Emphasis added.)

Congress therefore knew how to, and did, specifically modify or suspend pre-existing laws when it enacted the WIIN Act. But there is nothing in the WIIN Act modifying or repealing the ESA, NEPA, and CVPIA requirements for endangered species and environmental impact review before negotiating and entering into long-term water contracts.

There is simply no sign whatsoever in the WIIN Act that Congress intended to eliminate consultation under the ESA and environmental review under NEPA, and to repeal related requirements under the CVPIA, when calling for the conversion of CVP water contracts into permanent, repayment contracts. Instead, and to the contrary, Congress crafted the WIIN Act to enable the conversion of the contracts while preserving existing requirements for ESA consultation and NEPA review.

**PERTINENT STATUTES AND REGULATIONS**

Except for the statutes set forth in the Addendum following this brief, all applicable statutes and regulations are contained in the Addendums to Plaintiffs-

9

Appellants Opening Brief, Dkt. No. 36.2, to Federal Appellees' Answering Brief, Dkt. No. 69.1, and to Appellees' Answering Brief, Dkt. No. 74.1.

## STANDARD OF REVIEW

Reclamation does not dispute that summary judgment and the interpretation of statutes and contracts are reviewed *de novo*. Instead, Reclamation cites *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412-413 (2024), for the proposition that "[c]areful attention to the judgment of the Executive Branch may help inform that inquiry." Federal Appellees' Answering Brief ("Reclamation Brief") at 28. Here, however, there has been no explanatory judgment of the Executive Branch setting forth what Reclamation's attorneys argued post-hoc in the district court and this Court. The district court noted it had "not been made aware of any relevant *official* agency interpretation that exists outside the confines of litigation, and certainly not any interpretation that presents any reasoning or explanation." 1-ER-035:9-12 (emphasis in original).

Reclamation also cites *Northwest Ecosystem Alliance v. U. S. Fish and Wildlife Service*, 475 F.3d 1136, 1140 (9th Cir. 2007), for the proposition that the Administrative Procedure Act ("APA") standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." Reclamation Brief at 28. That case is irrelevant. That language pertained to a *factual* finding by the U.S. Fish and

10

Wildlife Service about the Washington gray squirrel. 475 F.3d at 1139-41. *This case is about the interpretation of statutes and contracts.* Further, in *Northwest Ecosystem Alliance*, 475 F.3d at 1143, this Court explained that it reviewed the U.S. Fish and Wildlife "Service's interpretation of the ESA" pursuant to *Chevron*, which has since been overruled. Reclamation similarly cited *Westlands Water District v. U.S. Department of the Interior*, 376 F.3d 853, 865 (9th Cir. 2004), for a deferential standard under the APA. Reclamation Brief at 27-28. That case also involved a *factual* review of the adequacy of an Environmental Impact Statement ("EIS") under NEPA. Here, there is no EIS. This case does not involve disputed factual issues. This case is about the interpretation of statutes and contracts. All issues in this case are therefore subject to a *de novo* review with no deference to what Reclamation has or has not done.

## ARGUMENT[1]

I. **The WIIN Act Did Not Eliminate Reclamation's Discretion to Comply with the ESA, NEPA, or CVPIA[2]**

    A. **To Prevail, Reclamation Must Show that the WIIN Act Impliedly Repealed its Duties to Comply with the ESA, NEPA, and CVPIA in Creating the Converted CVP Contracts.**

---

[1] Section I and II of this brief address arguments made by Reclamation in its answering brief and Sections III and IV address arguments raised by the water contractors in their answering brief.

[2] This portion of this brief replies to Reclamation and to the Contractors' joinder and adoption though all cites here are to Reclamation's Brief. Contractor Appellees' Brief ("Contractor Brief") at 7.

11

To prevail, Reclamation must show that the WIIN Act impliedly repealed the ESA, NEPA, and CVPIA requirements to conduct ESA and NEPA review in creating CVP contracts. Reclamation denies that it ever "argued that the WIIN Act impliedly repealed NEPA, the ESA, or the CVPIA" and asserts that "no such conclusion is necessary to find for Reclamation here." Reclamation Brief at 58. Yet, Reclamation bases its defense on its post-hoc claim that Section 4011(a)(4)(C) of the WIIN Act limits its ability to modify water service and other contractual rights such that it had no discretion to comply with the ESA, NEPA, or CVPIA when converting the contracts at issue. And it states that, "[b]ecause this case turns on statutory interpretation, the Court should begin its analysis with the text of the WIIN Act." *Id.* at 24. Reclamation also cites or quotes Section 4011(a)(4)(C) of the WIIN Act throughout its Answering Brief. *Id.* at 2, 13, 23, 30, 31, 32, 38, 39, 40, 41, 45, 46, 61. Nowhere does Reclamation contend that it would not have had to comply with the ESA, NEPA, or CVPIA if the WIIN Act had *not* been enacted.

This Court has long held that both the ESA and NEPA apply to Reclamation's issuance of CVP water contracts. In *Natural Resources Defense Council v. Houston*, for example, this Court held that the ESA's consultation requirement applied to CVP contract renewals. 146 F.3d 1118, 1125-1127 (9th Cir.

1998), *cert. denied*, 526 U.S. 1111 (1999).[3] This Court reasoned that "negotiating and executing contracts is 'agency action'" within the ambit of the ESA and therefore triggers the ESA's consultation requirements. *Id*. In so holding, this Court quoted in part the ESA regulation defining agency action, 50 C.F.R. § 402.02,

> Action means all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies … Examples include, but are not limited to … the granting of licenses, *contracts*, leases, easements, rights-of-way, permits or grants in aid.

*Houston,* 146 F.3d 1118, 1125 (emphasis added); *accord Karuk Tribe of California v. U. S. Forest Service*, 681 F.3d 1006, 1021 (9th Cir. 2012) (en banc) ("Examples of agency actions triggering Section 7 consultation include the renewal of existing water contracts.").

With respect to NEPA, this Court explained that "[t]he CVPIA requires the government to complete [the NEPA process] before it may enter into any subsequent … contracts." *Houston*, 146 F.3d 1118, 1131; *accord Pacific Coast Fed. of Fishermen's Assn's v. U.S. Dept. of the Interior*, 655 Fed.Appx. 595, 598-600 (9th Cir. 2016.) (holding that Reclamation had to comply with NEPA even in renewing CVP interim contracts).

---

[3] Plaintiffs-Appellants Opening Brief ("AOB") (Dkt. No. 36.1) in the bottom paragraph on page 31 inadvertently failed to include "cert. denied" after the citations of *Houston* and *Karuk Tribe of California* before the citations of the Supreme Court cases that denied certiorari. The quote shown after the citation to the *Karuk Tribe* case was in the Ninth Circuit opinion, not in the Supreme Court memorandum denial of certiorari.

13

The only way for the WIIN Act to have removed Reclamation's duties under the ESA, NEPA, and CVPIA to conduct ESA and NEPA review when issuing, converting, or reissuing CVP contracts is through the implied repeal of the relevant explicit requirements under those laws. Reclamation's attempt to escape the requirements for establishing an implied repeal is understandable but meritless. "There is a 'stron[g] presum[ption]' that disfavors repeals by implication and that 'Congress will specifically address' preexisting law before suspending the law's normal operations in a later statute." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018). Reclamation cannot prevail unless it overcomes the *strong presumption* that *disfavors* repeals by implication.

The Supreme Court's opinion in *National Association of Home Builders v. Defenders of Wildlife* does not affect this calculus. Reclamation cites *Home Builders* throughout its brief for the proposition that the ESA's consultation obligation "covers only discretionary agency actions" and is not triggered by actions "that an agency is required by statute to undertake once certain specified triggering events have occurred." *See, e.g.*, Reclamation Brief at 42 (quoting *Home Builders*). This is an incomplete description of the Supreme Court's holding in that case. In *Home Builders*, the Supreme Court held:

> While a later enacted statute (such as the ESA) can sometimes operate to amend or even repeal an earlier statutory provision (such as the CWA), repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest.

14

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (internal quotations and citations omitted). In *Home Builders*, the Supreme Court found that there was no discretion to apply the ESA because the ESA did not repeal the Clean Water Act by implication. It added that "[w]hile the language of [ESA] § 7(a)(2) does not explicitly repeal any provision of the CWA (or any other statute), reading it for all that it might be worth runs foursquare into our presumption against implied repeals." *Home Builders*, 551 U.S. at 664.

Further, in *Home Builders*, the Supreme Court applied *Chevron* deference to defer to the National Marine Fisheries Service and Fish and Wildlife Service ESA regulation, 50 C.F.R. § 402.03, stating that the ESA applied to all actions in which there is discretionary federal involvement or control. *Id*. at 673. To this point, the Court stated that it was appropriate "to look to the implementing agency's expert interpretation," set forth in 50 CFR §402.03. *Id.* at 666. In this case, there is no *Chevron* deference to Reclamation's interpretation of the WIIN Act or the CVPIA. *Chevron* had been overruled by the decision in *Loper Bright Enterprises* before the district court granted Reclamation's motion for summary judgment. And there is no agency expert interpretation set forth in a regulation. Instead, the only agency

15

interpretation supporting Reclamation's position are its own post-hoc arguments made by agency counsel during litigation.[4]

**B.     It Would Have Made Little Sense for Congress to Have Hidden a "Monumental Policy Shift" in Section 4011(a)(4)(C) of the WIIN Act, as Congress Knew How to Clearly Repeal Laws and Did So Elsewhere Within the WIIN Act.**

The district court asserted at the end of its Order that, "[u]ltimately, the Court must conclude that this *monumental policy shift* is one that Congress deliberately created by wording the WIIN Act as it did." 1-ER-071 (emphasis added). The essence of Reclamation's defense is the claim that Congress hid its intent to eliminate its obligation to conduct ESA and NEPA review when issuing, converting, or reissuing CVP contracts in a WIIN Act § 4011(a)(4)(C) mousehole. But, as the Supreme Court held in *Whitman v. American Trucking Associations, Inc.*, Congress does not "hide elephants in mouseholes." *A Community Voice v. U.S. Environmental Protection Agency*, 997 F.3d 983, 992 (9th Cir. 2021) (citing *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)) (quotations omitted).

It would make little sense to hide a repeal of the requirement for ESA and NEPA review when converting CVP contracts into potentially permanent contracts.

---

[4] Reclamation also cited *Environmental Protection Information Center v. Simpson Timber Company*, 255 F.3d 1073, 1081-82 (9th Cir. 2001), and *Grand Canyon Trust v. United States Bureau of Reclamation*, 691 F.3d 1008, 1017-1018 (9th Cir. 2012), for this proposition. Reclamation Brief at 42. Those cases did not involve claimed implied repeals by implication.

And it would make even less sense for Congress to effectuate such a repeal by mandating in Section 4011(a)(4)(C) of the WIIN Act that the contracts at issue here "not modify other water service, repayment, exchange and transfer contractual rights between the water users Association, and the Bureau of Reclamation[,]" especially when the existing prior contracts *required* ESA and NEPA review.

When Congress repeals other federal statutory requirements, it does so clearly, and that is what Congress did at least eight times in the WIIN Act. For example, Congress in the WIIN Act expressly excepted the Stanislaus River Predator Management Plan from the CVPIA. WIIN Act § 4012(a)(2). It also expressly excepted four tribal settlement agreements from NEPA. *Id.* §§ 3404(c)(2)(A), 130 Stat. 1759; 3605(c), 130 Stat. 1793; 3608(c)(2)(B), 130 Stat. 1800; 3704(c)(2)(A), 130 Stat. 1817. The language in all four exceptions was clear: Congress stated expressly that the settlement agreements do "not constitute [] major Federal action[s] under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.)" *See, e.g., Id*. § 3404(c)(2)(A), 130 Stat. 1759.

Congress likewise specifically excepted several projects or actions from other laws in enacting the WIIN Act. For instance, Congress expressly exempted grant programs from statutory requirements that would otherwise apply. *Id*. §§ 1175, 130 Stat. 1673. ("[S]ection 1001(b)(2) of the Water Resources Development Act of 1986 (33 U.S.C. 579a(b)(2)) shall not apply to any project authorized to

17

receive funding from the Inland Waterways Trust Fund established by section 9506(a) of the Internal Revenue Code of 1986."); 2201(b)(3), 130 Stat. 1732 ("Section 1452(d)(2) of the Safe Drinking Water Act (42 U.S.C. 300j-12(d)(2)) shall not apply to— (A) any funds provided pursuant to subsection (d) of th[at] section [which provides grants from the Drinking Water State Revolving Fund]; (B) any other assistance provided to an eligible system; or (C) any funds required to match the funds provided under subsection (d)."). Congress also amended another statute to expressly exempt certain aboveground water storage facilities from otherwise applicable regulations. *Id*. § 5011, 130 Stat. 1902 ("Part 112 of title 40, Code of Federal Regulations (or successor regulations), shall not apply to [specified] containers located at a farm[.]").

Congress followed the Supreme Court's guidance that, "[t]here is a 'stron[g] presum[ption]' that disfavors repeals by implication and that 'Congress will specifically address' pre-existing law before suspending the law's normal operations in a later statute." *Epic Sys. Corp.*, 584 U.S. 497, 510. Had Congress wanted to exempt the conversion of the CVP contracts at issue in Section 4011 from NEPA and the ESA, it would have done so expressly, as it did for the settlement agreements and other actions discussed *supra*. It did not. Reclamation's claimed defense therefore lacks merit.

18

**C.** **Notwithstanding Reclamation's Arguments, Article 3(e) of the Prior Contracts Required ESA Review Prior to the Execution of the Converted Contracts.**

Reclamation tries to escape the fact that the prior contracts, which it claims it cannot modify, expressly required compliance with the ESA and NEPA and that when converting those contracts into permanent contracts, Reclamation expressly *eliminated* the provisions mandating compliance with NEPA and the ESA. Reclamation Brief at 23, 29-32, 61-67. Instead, Reclamation denies that Article 3(e) of the prior contracts required pre-contract ESA review. *Id*. at 62. The complete text of Article 3(e) in the prior contracts is,

> The Contractor shall comply with requirements applicable to the Contractor in biological opinion(s) prepared as a result of a consultation regarding the execution of *this* Contract undertaken pursuant to Section 7 of the Endangered Species Act of 1973 (ESA), as amended, that are within the Contractor's legal authority to implement. *The Existing Contract*, which evidences in excess of 40 years of diversions for irrigation and/or M&I purposes of the quantities of Project Water provided in subdivision (a) of Article 3 of this Contract, *will be considered in developing an appropriate baseline for the biological assessment(s) prepared pursuant to the ESA, and any other needed environmental review*. Nothing herein shall be construed to prevent the Contractor *from challenging or seeking judicial relief* in a court of competent jurisdiction *with respect to any biological opinion or other environmental documentation referred to in this Article*.

2-ER-256-257 (emphasis added).

The first sentence of Article 3(e) could not be clearer that the required ESA compliance pertains to the execution of *this* contract, meaning the then-current contract, not some "prior term contract," as argued by Reclamation. Reclamation

19

Brief at 63. The second sentence further indicates that the water allocations required in Article 3(a) are a baseline, not something that could not be modified by ESA review or "any other needed environmental review[,]" as Reclamation likewise argues. And the third sentence allows the relevant water contractor to challenge or seek judicial relief with respect to "any biological opinion or other environmental documentation[,]" a strong indication that the prior contracts contemplated ESA review for each contract issuance (or subsequent reissuance or conversion). For example, a contractor might want to sue if its water quantities were reduced pursuant to a biological opinion or EIS.

Reclamation puts the cart before the horse in arguing "it reasonably omitted the language concerning 'consultation regarding the execution of *this contract*' because Reclamation had concluded that contract conversion under the WIIN Act did not require ESA consultation." Reclamation Brief at 63 (emphasis in original). Reclamation's claimed defense requires interpretation of the prior contract provisions.

### D. Reclamation's Argued Interpretation of the Prior Contracts and the WIIN Act is Contrary to this Court's Interpretation in *Haaland*.

Reclamation's interpretation of the prior contracts (that were converted into the contracts at issue here) is contrary to this Court's recent decision in *NRDC v. Haaland*, 102 F.4th 1045, 1075 (9th Cir. 2024). In *Haaland*, this Court held that

20

contract language virtually identical to Article 3(e) in other CVP water contracts did "not apply to any consultation other than one regarding the execution of the particular Settlement Contract in which it appears." (*Id*.) This would mean that the language in Article 3(e)—that "[t]he [pertinent CVP water] Contractor shall comply with requirements applicable to the Contractor in biological opinion(s) prepared as result of a consultation regarding the execution of this Contract undertaken pursuant to Section 7" of the ESA—requires ESA consultation for the execution of the contract being created. 2-ER-256.

Reclamation correctly observes that "*Haaland* rejected [an] attempt [by the plaintiffs there] to use that contract provision to impose ongoing consultation obligations on Reclamation." Reclamation Brief at 65. However, Plaintiffs in *this* case do *not* seek to impose ongoing ESA consultation obligations on Reclamation. Plaintiffs instead seek to require Reclamation to undertake the ESA consultation required to execute the contracts being converted.

In fact, there are *no* biological opinions for the execution of the prior term contracts. This was explained in *Haaland*. Following enactment of the CVPIA in 1992, Reclamation and the U.S. Fish and Wildlife Service established a two-track process for ESA compliance. *Haaland*,102 F.4th 1045, 1057-1066. "The first track would involve consultation on the coordinated operation of the CVP and SWP, resulting in a broad program-wide biological opinion. The second track would

21

involve consultations on narrower, discrete actions, such as the renewal of specific water contracts, and result in decisions that could be based on (or tiered from) the broader biological opinion." *Id.* at 1057. No so-called second track, narrower, contract-specific biological opinions have ever been prepared on CVP contracts or renewals. *Id.* at 1057-1065.

This Court's opinion in *Haaland* included language with respect to the WIIN Act contrary to what Reclamation is arguing in this case. This Court said that, with respect to the Delta-Mendota Canal water supply contracts at issue there ("DMC contracts"),

> If Reclamation entered into the DMC Contracts based on a defective ESA consultation, then any harm caused by this defect is continuing, since the DMC Contractors have not alleged that Reclamation engaged in a valid ESA consultation before the conversion. ([The Natural Resources Defense Council ("NRDC")], for its part, alleges that Reclamation did not engage in any ESA consultation at all.) *Because the WIIN Act provides that the conversion of water service contracts into repayment contracts does 'not modify other water service, repayment, exchange and transfer contractual rights between the water users' association, and the Bureau of Reclamation,' § 4011(a)(4)(C), a repayment contract may be equivalent to a continuation of the water service contrac*t, and therefore distinct from the new, superseding contract we considered in *Harrison Western Corp.* NRDC argues that under these circumstances, a court could rescind the repayment contracts or require FWS to initiate a consultation on these contracts under its 'broad discretion to fashion equitable remedies.' The DMC Contractors have not provided any persuasive argument as to why NRDC would be unable to obtain equitable relief in these circumstances. Therefore, the DMC Contractors have not carried 'the heavy burden of establishing that there remains no effective relief a court can provide.'

22

*Haaland*, 102 F.4th 1045, 1064 (emphasis added, citations omitted). This Court therefore has already addressed this issue and determined that the WIIN Act did not impliedly repeal the ESA or NEPA with respect to the conversion of CVP water contracts provided for pursuant to Section 4011 of the WIIN Act. Given this Court's reading of the WIIN Act in *Haaland*, the intention of Congress to repeal the ESA review requirement is most certainly *not* clear and manifest, as required by the Supreme Court in *Home Builders*. 551 U.S. 644, 662.

**E.  Notwithstanding Reclamation's Arguments, Articles 2(a) and (b) of the Prior Contracts Required NEPA Review Prior to the Execution of the Converted Contracts.**

Reclamation also denies that Articles 2(a) and 2(b) of the prior contracts required it to undertake NEPA review before executing those contracts. Reclamation Brief at 65-66. Article 2(b) provided that if "all environmental documentation required to allow execution of the Contractor's long-term renewal contract" was not completed by February 28, 2010, then "the parties [would have to] expeditiously complete the environmental documentation required of each of them in order to execute the Contractor's long-term renewal contract at the earliest possible date." 2-ER-252. Reclamation admits it eliminated those terms from the converted contracts. Reclamation Brief at 66. This of course runs counter to Reclamation's assertion that Section 4011(a)(4)(C) of the WIIN Act prohibits it from modifying the terms of the contracts when converting them. *See, e.g.*, *Id*. at

13. Reclamation is trying to have it both ways: It asserts that Section 4011(a)(4)(C) prohibits it from modifying the CVP contracts when converting them, such that the conversion process is exempt from the requirements of the ESA and NEPA, while simultaneously modifying those contracts to expressly remove provisions requiring ESA and NEPA review.

Reclamation also disagrees that the word "other" in Section 4011(a)(4)(C) only makes sense if it applies to contracts *other* than the subject converted contracts. Reclamation Brief 39. Section 4011(a)(4)(C) prohibits the converted contracts at issue here from "modify[ing] other water service, repayment, exchange and transfer contractual rights between the water users' association, and the Bureau of Reclamation. . . ." Reclamation's interpretation does not make sense because the statute does not say *what* "water service, repayment, exchange and transfer contractual rights" *could* be modified in the existing contracts to be converted. The word "other" only makes sense when applied to contractual rights in contracts other than the ones being converted.

Reclamations' argument is also contrary to the clear mandates of the CVPIA and this Court's interpretation thereof. The prior contracts required NEPA as well as ESA review, and the CVPIA expressly states that,

> Upon renewal of *any* long-term repayment *or* water service contract providing for the delivery of water from the [CVP], [Reclamation] *shall* incorporate *all* requirements imposed by existing law, including provisions of this title, within such renewed contracts.

24

CVPIA § 3404(c)(2) (emphasis added). And this Court held that "the CVPIA requires the government to complete an EIS before it may enter into any subsequent Friant renewal contracts." *Houston*, 146 F.3d 1118, 1131.

**F.    Section 4011 of the WIIN Act Did Not Limit Reclamation's Discretion to Negotiating the Financial Terms of Repayment Contracts.**

Reclamation argues that Section 4011 of the WIIN Act limits its discretion when converting CVP water contracts such that it is only permitted to negotiate the *financial* terms of repayment. Reclamation Brief at 23, 29-32. That runs counter to this Court's interpretation of Section 4011 in *Haaland*. And that is not how Reclamation interpreted the statute when it was converting the contracts. As noted, Reclamation *eliminated* the terms in Articles 2 and 3 in the prior contracts that *required* ESA and NEPA review of the contracts to be executed. Moreover, Article 46 of the converted contracts states, under the heading "CONTRACT DRAFTING CONSIDERATIONS,"

> *This amended Contract has been negotiated and reviewed by the parties hereto*, each of whom is sophisticated in the matters to which this amended Contract pertains. *The double-spaced Articles of this amended Contract have been drafted, negotiated, and reviewed by the parties, and no one party shall be considered to have drafted the stated Articles.* Single-spaced Articles are standard Articles pursuant to Bureau of Reclamation policy.

2-ER-224 (emphasis added). To this point, Articles 2-13, 15-18, 24-26, 28-28.3, 31-37, and 42 of the converted contracts were either entirely or partially double-

25

spaced, meaning they were in full or at least in part negotiated by Reclamation. 2-ER-165-222. Articles 2 and 3 of the converted contract, that eliminated the requirements in the prior contracts requiring ESA and NEPA review, were entirely double-spaced, meaning they were negotiated. 2-ER-167-172.

Finally, Section 4011(a) expressly states the conversions shall be "under mutually agreeable terms and conditions."

### G. Reclamation's Conversion of Water Service Contracts under Section 4011 Is a Major Federal Action that Requires NEPA Review.

Reclamation argues that its conversion of the CVP contracts under Section 4011 of the WIIN Act is not a major Federal action requiring NEPA review because it lacked the required discretion necessary to trigger NEPA review. Reclamation Brief at 32-42. This misunderstands the law. Reclamation relies on the WIIN Act's requirement that it "convert any water service contract" upon "the request of the contractor[.]" *Id*. at 35 (citing WIIN Act § 4011(a)(1)). That requirement to offer a contract does not eliminate Reclamation's discretion in determining the terms of the contract. *Aluminum Co. of America v. Central Lincoln Peoples' Utility District*, 467 U.S. 380, 398 (1984);[5] *Forelaws on Board v. Johnson*, 743 F.2d 677, 681-682

---

[5] Reclamation tries to distinguish *Aluminum Company of America* in a footnote, arguing that "none" of the statutory provisions at issue in that case contained the kind of express prohibition on modifying 'contractual rights' that appears in WIIN Act § 4011(a)(4)(C)[.]" Reclamation Brief at 41, fn. 8. Reclamation's analysis, however, ignores the fact that the prior contracts *required* NEPA and ESA review.

(9th Cir. 1998). For example, environmental review was required for the initial long-term contract renewals under the CVPIA even though such renewals were mandated by that statute. CVPIA § 3404(c); *Houston*, 146 F.3d 1118, 1131.

Reclamation argues that Congress eliminated the availability of "contract negotiation and environmental review" to encourage contract conversions. Reclamation Brief at 39-40. The WIIN Act, however, included explicit provisions to encourage contract conversions. In addition to requiring Reclamation to offer contract conversions at the request of contractors, the WIIN Act exempts converted contracts from acreage limitations and states that the contracts will continue so long as charges are paid. 1-ER-047:18-21.

### H. ESA and NEPA Review Would be Required Even if There was No CVPIA.

Even if there were no CVPIA, ESA review would be required for the conversion of contracts for the diversion of massive quantities of freshwater from rivers that provide critical habitat for threatened and endangered species from fixed-term contracts to "repayment" contracts that may persist indefinitely. Section 7 of the ESA requires agencies, like Reclamation, to consult with the relevant federal wildlife agencies before performing any "agency action" that "may affect" listed species or their critical habitats. 16 U.S.C. § 1536(a)(2); 50 C.F.R. §

27

402.14(a). The terms "agency action" and "may affect" are "defined broadly to ensure compliance with the ESA's substantive protections." *Center for Biological Diversity v. U.S. Environmental Protection Agency*, 168 F.4th 1164, 1179 (9th Cir. 2026); *accord San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation District*, 49 F.4th 1242, 1244 (9th Cir. 2022), *cert. denied,* 144 S.Ct. 74 (2023) ("The purpose of enacting the ESA was 'to require agencies to afford first priority to the declared national policy of saving endangered species.'"). Converting fixed-term contracts for the diversion of large quantities of freshwater from endangered species' critical habitat to forever contracts certainly "may affect" those species and their critical habitats.

The same is true for NEPA. Reclamation admits that the CVPIA required environmental review when existing long-term CVP contracts were renewed. AOB at 32 (citing 2-ER-114:2-3 and 2-ER-133:3-5). But even if there were no CVPIA, NEPA would require environmental review for the contract conversions at issue here. NEPA requires for "major Federal actions" "a detailed statement by the responsible official on--(i) reasonably foreseeable environmental effects of the proposed agency action. . . ." 42 U.S.C. § 4332(C)(i.) CVP water contracts are major Federal actions.

This Court has explained that "[a]n agency can comply with NEPA in three ways: (1) it can prepare an … EIS[]; (2) it can prepare an Environmental

28

Assessment ('EA'); or (3) it can invoke a Categorical Exclusion ('CE') to avoid preparing an EIS or EA." *Friends of the Inyo v. U.S. Forest Service*, 103 F.4th 543, 547 (9th Cir. 2024). Reclamation took *none* of those actions to comply with NEPA in converting the contracts. This is particularly concerning given that this Court has already held that federal laws "shall be interpreted and administered in accordance with [NEPA]" "to the "fullest extent possible." *Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154, 1163 (9th Cir. 2020).

**II.     The WIIN Act Savings Clauses Preserved the Requirements for ESA Consultation and NEPA Review for the Conversion of Water Service Contracts.**

       **A.     Section 4012(a)(2) of the WIIN Act Preserved ESA and NEPA Review.**

The WIIN Act expressly states,

SEC. 4012. SAVINGS LANGUAGE.

(a) IN GENERAL.—This subtitle *shall not* be *interpreted* or implemented in a manner that—
(2) affects or modifies *any* obligation under the Central Valley Project Improvement Act (Public Law 102-575; 106 Sat. 4706), *except* for the savings provisions for the Stanislaus River predator management program expressly established by section 11(d) and provisions in section 11(g).

WIIN Act § 4012(a)(2) (emphasis added). That savings clause could not be clearer. It lists one, *and only one*, exception to retaining *all* CVPIA obligations, including the obligation codified in the CVPIA that Reclamation comply with the ESA and NEPA when issuing CVP contracts.

29

Section 3404 of the CVPIA, which governs the renewal of existing long-term water contracts, states that "[n]o such renewals shall be authorized *until appropriate environmental review*, including the preparation of the environmental impact statement required in section 3409 of this title, *has been completed*." CVPIA § 3404(c)(1) (emphasis added). Yet Reclamation here is trying to avoid its obligations under the CVPIA to conduct ESA and NEPA review before entering into potentially permanent water delivery contracts. In essence, it is trying to add an exception to Section 4012 in addition to the one specified (that does not apply here). Congress could have but did not add another exception. Under the doctrine of *expressio unius est exclusio alterius*, all other CVPIA obligations, including those codified in Section 3404(c)(1), are *not* excepted and thus *not* modified or eliminated by *anything* in the WIIN Act.

Recognizing this, Reclamation attempts to manipulate the clear language of Section 3404 of the CVPIA. For example, it tries to distinguish the "renewal" of a contract from the "conversion" of one, asserting that unlike contract "renewal," "conversion" is not done in anticipation of a contract's expiration and can occur at any point during the term of an existing contract. Reclamation Brief at 51, fn. 11. It claims, further, that it "cannot simultaneously comply with WIIN Act § 4110[sic] by converting a water service contract to a repayment contract with no term and with CVPIA § 3404 by renewing a water service contract with a 25-year term."

30

Reclamation Brief at 52.[6] This is a straw man argument; no one contends that under Section 4111 a water service contract could be converted to a repayment contract with no term and also be renewed with a 25-year term. The issue here is whether contracts can be converted with absolutely no ESA or NEPA review whatsoever.

Reclamation also tries to twist the meaning of Section 3404(c) of the CVPIA, alleging that the provision "concerns [only] wholesale contract renewals, not the limited conversion of water service contracts to repayment contracts addressed by the WIIN Act." Reclamation Brief at 50. Section 3404(c) provides, in pertinent part,

> [T]he Secretary shall, upon request, "renew any existing *long-term repayment or water service contract* for the delivery of water from the Central Valley Project for a period of 25 years and may renew such contracts for successive periods of up to 25 years each."

CVPIA § 3404(c) (emphasis added). Since Section 3404(c) refers to *both* "repayment" *and* "water service contracts" it makes little sense to *add* an exclusion to Section 4012(a)(2) of the WIIN Act to *exclude* the conversion of long-term "water service contracts" to long-term "repayment contracts" from the required ESA and NEPA review. Moreover, both Black's Law Dictionary and the Oxford Dictionary of English define "renewal" to include the replacement of an old

---

[6] The phrase "§ 4110" on p. 52 of Reclamation's brief three times appears to be a typo, with Reclamation meaning § 4111.

contract with a new contract, as was the case with the converted contracts here. *See* 1-ER-051:25-28; *see also* 1-ER-052:1-4.

Finally, and as noted, Reclamation's reading of the WIIN Act and the CVPIA runs afoul of "the strong presumption that repeals by implication are disfavored." *See, e.g.*, *Murphy Company v. Biden*, 65 F.4th 1122, 1132 (9th Cir. 2023), *cert. denied*, 144 S.Ct. 1111 (2024).

## B. Sections 4012(a)(3) and (4) and (b) Preserved ESA Review.

Reclamation likewise dismisses the savings clauses codified in Sections 4012(a)(3) and (4) of the WIIN Act. Reclamation Brief at 53-55. Those provisions state, in pertinent part, that the WIIN Act "shall not be interpreted or implemented in a manner that … overrides, modifies, or amends the applicability of the Endangered Species Act or the application of the smelt and salmonid biological opinions to the operation of the Central Valley Project" or in manner that "would cause additional adverse effects on listed fish beyond the range of effects anticipated to occur to the listed fish species for the duration of the applicable biological opinion. . . ." WIIN Act § 4012(a).

Reclamation's arguments that these provisions are irrelevant are unavailing for at least three reasons. First, Section 4012(a)(3) expressly applies to "the operation of the Central Valley Project," but does not define this phrase. Read broadly, this means that Section 4012(a)(3) applies to all aspects of Reclamation's

operation of the CVP, including the creation, renewal, and conversion of water delivery contracts. Second, as explained above, Article 3(e) of the prior contracts required ESA review. And third, Section 4012(a)(4) applies to the converted contracts at issue here because there have been no biological opinions prepared on the prior CVP contracts, as explained in *Haaland*. 102 F.4th 1045, 1057-1065. As a result, the only operative biological opinions are those issued to cover the impacts associated with Reclamation's long-term operation of the CVP, which have yet to expire. And it is undisputed that the conversion of a fixed-term water contract that diverts millions of acre-feet of water from endangered and threatened species' habitat into a "repayment" (or perpetual) contract "would cause additional adverse effects on listed fish species beyond the range of effects anticipated to occur to the listed fish species. . . ." WIIN Act § 4012(a)(4).

Also, section 4012(b) provides,

> (b) SUCCESSOR BIOLOGICAL OPINIONS.—
>
> (1) IN GENERAL.—The Secretaries of the Interior and Commerce shall apply this Act to any successor biological opinions to the smelt or salmonid biological opinions only to the extent that the Secretaries determine is consistent with—(A) the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.), its implementing regulations, and the successor biological opinions; and (B) subsection (a)(4).
>
>> (2) LIMITATION.—Nothing in this Act shall restrict the Secretaries of the Interior and Commerce from completing consultation on successor biological opinions and through those successor biological opinions implementing whatever adjustments in operations *or other*

33

*activities* as may be required by the Endangered Species Act of 1973 and its implementing regulations.

(emphasis added). "[N]othing in the WIIN Act modifies (or even bends) any of Federal Defendants' obligations under the ESA." *California Natural Resources Agency v. Ross*, 2020 WL 2404853, *20 (No. 1:20-CV-00426, E.D. Cal., May 11, 2020).

### C. Section 4011(d)(4) Preserved ESA and NEPA Review.

Reclamation also tries to distinguish and dismiss the savings clause in Section 4011(d)(4) of the WIIN Act. Reclamation Brief at 55. That section provides that "implementation" of the WIIN Act "shall not alter … except as expressly provided in this section, any obligations under the reclamation law, including the continuation of Restoration Fund charges pursuant to section 3407(d) (Public Law 102–575), of the water service and repayment contractors making prepayments pursuant to this section." Reclamation law includes the CVPIA, which is Public law 102-575, and the CVPIA, as noted, expressly requires Reclamation to comply with both the ESA and NEPA when executing CVP water contracts. Accordingly, pursuant to Section 4011(d)(4) of the WIIN Act, Reclamation cannot lawfully "implement" the CVP, including by converting fixed-term water delivery contracts into perpetual water delivery contracts, in a manner that would "alter" its obligations under the CVPIA, which include compliance with the ESA and NEPA.

34

**D.  The WIIN Act Signing Statement Also Supports the Proposition that the Act Preserved ESA Review.**

The president's signing statement is the only pre-litigation, official Executive Branch interpretation of the WIIN Act. In the signing statement, the president stated, in pertinent part, that Subtitle J of the WIIN Act, which covers the sections of that Act at issue here, "require[s] continued application and implementation of the Endangered Species Act[] … to assure that state water quality standards are met." AOB at 41.

To minimize the import of the signing statement, Reclamation argues that the above quote in the signing statement is only relevant to a subset of Subtitle J dealing with "short-term provisions governing operations" of the CVP. Reclamation Brief at 55-57. This misunderstands the signing statement and Subtitle J of the WIIN Act. Pursuant to Section 4013 of the WIIN Act, 130 Stat. 1883, *all* the provisions in Subtitle J expire five years after the date of the Act's enactment, with the exceptions of Section 4004, which expires ten years after the Act's enactment, and projects under construction in Sections 4007, 4009(a), and 4009(c). By definition, therefore, the president was referring to the entirety of Subtitle J, which in fact includes Section 4011(a)(4)(C), the provision of the WIIN Act that Reclamation now claims exempted the relevant contracts from the ESA and NEPA, when interpreting the Act to contemplate the "continued application and implementation of the [ESA]." The only pre-litigation interpretation of the

35

relevant provision of the WIIN Act by the Executive Branch thus supports the conclusion that the WIIN Act did not eliminate ESA review of actions taken pursuant to the Act, including the conversion of fixed-term water delivery contracts into perpetual, repayment contracts.

**III.    Despite the Contractors' Remonstrations to the Contrary, the Contract Conversions Triggered NEPA and the ESA and are Not Excluded from NEPA Review Under Categorical Exclusions.[7]**

    **A.    The WIIN Act Contract Conversions are "Major Federal Actions" Under NEPA.**

The Contractors argue that the contract conversions did not change the status quo of CVP operations and thus are not "major federal actions" under NEPA. Contractors' Brief at 17-21. This Court, however, laid that issue to rest in *Houston*. *Houston*, 146 F.3d at 1131. Citing Section 3404(c)(1) of the CVPIA, this Court held that "the CVPIA requires the government to complete [NEPA review] before it may enter into any subsequent Friant renewal contracts." *Id*. Moreover, this Court in *Pit River Tribe v. U.S. Forest Service* expressly held that the renewal of a lease (even one that did not change the operational terms at issue) was a major federal action under NEPA because it modified "the status quo" by extending the term of the leases at issue. 469 F.3d 768, 784 (9th Cir. 2006); *see also Kimble v.*

---

[7] As noted, Sections I and II of this brief address arguments made by Reclamation in its answering brief and Sections III and IV address arguments raised by the water contractors in their answering brief.

*Marvel Entertainment, LLC.*, 576 U.S. 446, 456 (2015) (noting that the import of stare decisis carries enhanced force when a decision interprets a statute or contract). Here, like there, the contract conversions extend fixed-term contracts indefinitely. By converting the contracts into ones that may last forever, Reclamation has changed the status quo by reducing the habitat for listed fish species, further increasing the likelihood of their extinction.

### B.    No Categorical Exclusions Apply.

The Contractors also argue that the contract conversions were excluded from NEPA review under categorical exclusions. Contractors' Brief at 21-24. Not so. This Court explained that "[c]ategorical exclusions, by definition, are limited to situations where there is an insignificant or minor effect on the environment." *Sierra Club v. Bosworth*, 510 F.3d 1016, 1027 (9th Cir. 2007) (internal quotations omitted). There is nothing insignificant or minor in converting fixed-term contracts for the diversion of water from rivers that provide critical habitat for several species on the brink of extinction into "repayment" contracts that will last in perpetuity.

The United States Department of Interior categorical exclusions cited by the Contractors exempt routine financial transactions like salaries and expenses and routine government business like site maintenance and minor replacements. Contractors' Brief at 22-23. And the Reclamation categorical exclusions cover the

37

administration and approval of contracts "where the only result will be to implement an administrative or financial practice or change." *Id*. at 23. For several reasons, none of these apply to the conversion contracts at issue.

First, neither the Department of the Interior or Reclamation have the power to repeal the requirements for ESA and NEPA review in the CVPIA, NEPA, and ESA.[8] Second, these categorical exclusions pertain to routine contracts covering salaries and expenses and do not cover the diversion of enormous quantities of water from an already impaired watershed that provides some of the last habitat for several species on the brink of extinction.

Third, Reclamation did not categorically exclude the contract conversions from NEPA compliance. Even if Reclamation had categorically excluded the contract conversions from NEPA compliance, it would have had to have made a "reasoned decision" to do so "based on all the relevant factors and information." *Bosworth*, 510 F.3d 1016, 1026. Reclamation could not have done so by "post-hoc" action. *Id*. Since Reclamation itself did not categorically exempt the contract conversions, there is no categorical exclusion for this Court to review.

## IV.    Appellants' Request for Entry of Judgment Is Not Premature.

---

[8] The Contractors say wrongly citing their SER-30, "Appellants concede that the conversions did not change the status quo of CVP operations, beyond Congress's mandate that the contracts become permanent." (Contractors' Brief 24.) No such concession was made.

The Contractors wrongly argue that Appellants' request for entry of judgment is premature. Contractor Brief at 27-29. This appeal regards an order on cross-motions for summary judgment involving statutory and contract interpretation, all of which are subject to *de novo* review. This Court "may direct that summary judgment be granted to either party based on its *de novo* review of the record." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 991 (9th Cir. 2014); *accord Houston*, 146 F.3d 1118, 1127-1129 (holding that CVP contracts entered into in the absence of ESA compliance were subject to rescission and noting that under the APA, 5 U.S.C. § 706(2)(A)-(D), courts may "set aside" agency action that is arbitrary, capricious, or not in accordance with law).

Reclamation's conversion of numerous contracts for water exports amounting to 3 million acre-feet of water per year into permanent contracts with no ESA or NEPA review whatsoever was an extremely serious violation of law subject to rescission under the APA. It was an irreversible and irretrievable commitment of resources. On the other hand, there would be virtually no disruptive impact by rescinding the contracts; water deliveries could proceed as they have for years under the interim contracts authorized by Section 3404(c)(1) of the CVPIA. Appellants seek rescission of the converted contracts and the prevention of subsequent contract conversion or renewal until Reclamation has complied with the ESA and NEPA.

39

## CONCLUSION

The Court should reverse the district court's decision to grant summary judgment to Defendants/Appellees and direct the district court to enter judgment for Plaintiffs/Appellants.

April 1, 2026                    Respectfully submitted,

/s/ E. Robert Wright
E. Robert Wright
LAW OFFICE OF E. ROBERT WRIGHT

/s/ Adam Keats
Adam Keats
LAW OFFICE OF ADAM KEATS, PC

*Counsel for Plaintiffs/Appellants*
*Restore the Delta and Planning and*
*Conservation League*

/s/ John Buse
John Buse
CENTER FOR BIOLOGICAL DIVERSITY

*Counsel for Plaintiff/Appellant*
*Center for Biological Diversity*

## SIGNATURE ATTESTATION

Pursuant to Circuit Rule 25-5(f), I, Adam Keats, attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing content and have authorized this filing.

By: /s/ Adam Keats

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-5137

I am the attorney or self-represented party.

**This brief contains** 7,618 **words,** including [            ] words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⦿ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☒ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/Adam Keats   **Date** April 1, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

41

**ATTACHMENT A:**

**ADDENDUM TO PLAINTIFFS-APPELLANTS' OPENING BRIEF\***

**TABLE OF CONTENTS**

**Statutes**

**Water Infrastructure Improvements for the Nation Act ("WIIN Act"), Pub. L. No. 114-322, 130 Stat. 1628 (2016) (codified at 42 U.S.C. § 6945(d)).**

WIIN Act § 1175, 130 Stat. 1673..................................................................2

WIIN Act § 2201(b)(3), 130 Stat. 1732.....................................................2

WIIN Act § 3404(c)(2)(A), 130 Stat. 1759...............................................3

WIIN Act § 3605(c), 130 Stat. 1793.........................................................3

WIIN Act § 3608(c)(2)(B), 130 Stat. 1800…………..………………….............3

WIIN Act § 3704(c)(2), 130 Stat. 1817…………...........................................4

WIIN Act § 5011, 130 Stat. 1902...............................................................4,5

Addendum Page 1

**<u>WIIN Act Public Law 114-322; 130 Stat. 1628 (Dec 16, 2016)</u>**

**WIIN Act SEC. 1175, 130 Stat. 1673-Projects Funded By The Inland Waterways Trust Fund**.

Beginning on June 10, 2014, and ending on the date of the completion of the project for navigation, Lower Ohio River, Locks and Dams 52 and 53, Illinois and Kentucky, authorized by section 3(a)(6) of the Water Resources Development Act of 1988 (102 Stat. 4013), section 1001(b)(2) of the Water Resources Development Act of 1986 (33 U.S.C. 579a(b)(2)) shall not apply to any project authorized to receive funding from the Inland Waterways Trust Fund established by section 9506(a) of the Internal Revenue Code of 1986.

**WIIN Act SEC. 2201(b)(3), 130 Stat. 1732-Inapplicability Of Limitation--**
Section 1452(d)(2) of the Safe Drinking Water Act (42 U.S.C. 300j–12(d)(2)) shall not apply to—

(A) any funds provided pursuant to subsection (d) of this section;

(B) any other assistance provided to an eligible system;

or

(C) any funds required to match the funds provided under subsection (d).

Addendum Page 2

**WIIN Act SEC. 3404(c)(2)(A), 130 Stat. 1759-Execution Of The Pechanga Settlement Agreement**.

(A) IN GENERAL—Execution of the Pechanga Settlement Agreement by the Secretary under this section shall not constitute a major Federal action under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.).

**WIIN Act SEC. 3605(c), 130 Stat. 1793-Authorizations**--The Secretary and the Attorney General are authorized to execute, on behalf of the United States, the Settlement Agreement and any amendments approved by the parties as necessary to make the Settlement Agreement consistent with this Act. Such execution shall not constitute a major Federal action under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.). The Secretary is further authorized and directed to take all steps that the Secretary may deem necessary or appropriate to implement the Settlement Agreement and this Act.

**WIIN Act SEC. 3608(c)(2)(B), 130 Stat. 1800-Not A Major Federal Action**--Execution of the Settlement Agreement by the Secretary of the Interior under this subsection shall not constitute a major Federal action under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.).

Addendum Page 3

**WIIN Act SEC. 3704(c)(2), 130 Stat. 1817-Effect Of Execution**.

(A) IN GENERAL—The execution of the Compact by the Secretary under this section shall not constitute a major Federal action for purposes of the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.).

**WIIN Act SEC. 5011, 130 Stat. 1902-Regulation Of Aboveground Storage At Farms**.

Section 1049(c) of the Water Resources Reform and Development Act of 2014 (33 U.S.C. 1361 note; Public Law 113–121) is amended—

(1) by redesignating paragraphs (1) and (2) as subparagraphs (A) and (B), respectively, and indenting appropriately;

(2) by striking the subsection designation and heading and all that follows through ''subsection (b),'' and inserting the following:

''(c) REGULATION OF ABOVEGROUND STORAGE AT FARMS.—

''(1) CALCULATION OF AGGREGATE ABOVEGROUND STORAGE CAPACITY.—For purposes of subsection (b),''; and

(3) by adding at the end the following:

''(2) CERTAIN FARM CONTAINERS.—Part 112 of title 40, Code of Federal Regulations (or successor regulations), shall not apply to the following containers located at a farm:

Addendum Page 4

"(A) Containers on a separate parcel that have—

"(i) an individual capacity of not greater than 1,000 gallons; and

"(ii) an aggregate capacity of not greater than 2,500 gallons.

"(B) A container holding animal feed ingredients approved for use in livestock feed by the Food and Drug Administration.".